## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **Brittney Gibson,** | |
| *Plaintiff*, | Case Number: _____ |
| v. | |
| **Consumer Adjustment Company, Inc.,** | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Brittney Gibson**, ("**Ms. Jones**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Consumer Adjustment Company, Inc.** ("**Consumer Adjustment**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Gibson against Consumer Adjustment for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and the *Florida Consumer Collection Practices Act*, Fla. Stat. § 559.55, *et seq.* ("**FCCPA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. §1692k(d), the FCCPA, Fla. Stat. § 559.77(1), and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

4. The Defendant is subject to the provisions of the FDCPA and the FCCPA, and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Fla. Stat. § 48.193.

5. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Ms. Gibson

6. **Ms. Gibson** is a natural person residing in the City of Winter Haven, Polk County, Florida.

7. Ms. Gibson is a *Consumer* as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3), and Fla. Stat. § 559.55(8), respectively.

### Consumer Adjustment

8. **Consumer Adjustment** is a Missouri corporation with a principal business address of **514 Earth City Plaza, Suite 100, Earth City, MO 63045**.

9. Consumer Adjustment is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

10. Consumer Adjustment is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Fla. Stat. § 559.55(7), in that it uses instrumentalities of commerce, including postal mail and the internet, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11. Consumer Adjustment is licensed as a *Consumer Collection Agency* ("**CCA**") by the Florida Office of Financial Regulation, holding license number **CCA9904365.**

12. As a licensed CCA, Consumer Adjustment knows, or should know, the requirements of the FDCPA and the FCCPA.

## FACTUAL ALLEGATIONS

### The Debt

13. Prior to July 2016, Ms. Gibson allegedly incurred a debt (the "**Debt**") to Paragon Emergency Services, LLC ("**Paragon**") for medical treatment allegedly not covered by her medical insurance policy.

14. The alleged Debt arose from goods or services which were for family, personal, or household purposes, specifically personal medical treatment, and therefore meets the definitions of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Fla. Stat. § 559.55(6).

### Debt Reported by Midwest, Disputed by Ms. Gibson

15. Sometime prior to November 2017, Paragon assigned, or otherwise transferred the Debt to Midwest Recovery Systems, LLC ("**Midwest Recovery**"), a Missouri-based debt collector.

16. In November 2017, Midwest Recovery began reporting the Debt, monthly, to the major *Consumer Credit Reporting Agencies* ("**CRAs**"), including Trans Union.

17. In or around January 2018, Ms. Gibson requested and obtained a copy of her consumer credit disclosure from Trans Union.

18. Ms. Gibson noticed the Midwest Recovery tradeline reporting to her credit and disputed the accuracy of Midwest Recovery's reporting of the Debt.

19. Trans Union, upon receipt of Ms. Gibson's dispute, sent Midwest Recovery an *Automated Consumer Dispute Verification* ("**ACDV**") request through an online platform known as e-OSCAR, which asks Midwest Recovery to make a reasonable investigation into the dispute pursuant to the *Fair Credit Reporting Act* ("**FCRA**"), 15 U.S.C. § 1681, *et seq.*

20. Midwest Recovery thus knew that Ms. Gibson disputed the Debt, at least as early as January 2018.

21. Shortly thereafter, Midwest Recovery responded to Ms. Gibson's dispute and agreed to remove the account from her file. **SEE PLAINTIFF'S EXHIBIT A.**

22. A debt collector who becomes aware that a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

23. On information and belief, Midwest Recovery thereafter returned the Debt to Paragon, noting that Ms. Gibson disputed the account.

**Consumer Adjustment "Parks" Previously Disputed, Deleted Debt**

24. In February 2022, Paragon assigned the Debt to Consumer Adjustment.

25. In March 2022, Consumer Adjustment started reporting the Debt to the major CRAs, including Experian, as a purported "new" collection. **SEE PLAINTIFF'S EXHIBIT B.**

26. At no point did Consumer Adjustment inform Ms. Gibson that it had reported the Debt to Experian.

27. By reporting the Debt to the CRAs without notice to Ms. Gibson, Consumer Adjustment engaged in what is known as "debt parking."

28. Debt parking occurs when a debt collector or debt purchaser reports debts to CRAs without notifying the consumer first; the consumer is often unaware that the collection appears on their credit report.

29. The consumer often only finds out about the "parked" debt when they apply for credit or employment and is told by their potential creditor or employer that there is a problem with their credit report. Lacking time to dispute

the debt, the consumer often hastily pays it in an effort to quickly clear their credit record.

30. The Federal Trade Commission ("**FTC**") has determined that "debt parking" is an abusive debt collection practice and violates the FDCPA.

31. In September 2019, Midwest Recovery was sold to Consumer Adjustment.

32. In 2020, the FTC obtained a permanent injunction and $24 million civil penalty against Midwest Recovery, in part based on their frequent debt parking. *Federal Trade Commission vs. Midwest Recovery Systems LLC*, et. al, case 4:20-cv-01674, U.S.D.C., E.D. Mo., November 25, 2020.

33. Despite this, Consumer Adjustment continued to park its bogus tradeline on Ms. Gibson's credit reports.

34. Consumer Adjustment's report of the Debt to Experian was a *Communication* as defined by 15 U.S.C. § 1692a(2) and was done in connection with collection of the alleged Debt.

35. Consumer Adjustment also failed to indicate the Debt was disputed in its report to Experian.

36. The tradeline thus appeared on Ms. Gibson's credit report as a "new" and "non-disputed" debt.

37. Consumer Adjustment knew, when it received a portfolio of debts from Paragon for collection, which included Ms. Gibson's Debt, that many of the

debts had been charged off several years ago and had been placed with multiple agencies previously.

38. Consumer Adjustment is a large debt collection agency and is acutely aware that any portfolio of consumer debts already worked by other debt collectors inherently contains a large number of disputed debts.

39. However, Consumer Adjustment employed no reasonable procedures designed to flag previously disputed debts – or even so much as *ask* Paragon to identify previously disputed debts.

40. On information and belief, Paragon failed to inform Consumer Adjustment of Ms. Gibson's existing dispute, despite having been informed of it on at least one prior occasion over the past four years.

41. Assuming *arguendo* that Paragon failed to disclose to Consumer Adjustment that the Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (holding that debt collectors remain liable even when violations are not knowing or intentional).

42. Consumer Adjustment's failure to disclose that the Debt was disputed materially damaged Ms. Gibson's credit scores.

43. The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Ms. Gibson suffered "a real risk of financial harm caused by an

inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

44. Had Consumer Adjustment's reporting been substantially similar to the previous debt collector's, Experian's automated systems would have prevented the Consumer Adjustment tradeline from appearing on Ms. Gibson's report.

45. As a result of Consumer Adjustment's re-reporting of previously deleted information as a purported "new" collection, Ms. Gibson's credit scores dropped significantly.

46. Had Consumer Adjustment reported the account with a Metro 2 Compliance Condition Code of "XB" – meaning "consumer disputes this information" – Ms. Gibson's credit scores would have remained unchanged.

47. As a result of Consumer Adjustment's actions, Ms. Gibson has suffered damages, including lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

48. The above-described collection conduct by Consumer Adjustment in its efforts to collect this alleged debt from Ms. Gibson were oppressive, deceptive, misleading, unfair and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

49. These collection actions taken by Consumer Adjustment, and the collection employees employed by Consumer Adjustment, were made in violation of multiple provisions of the FDCPA including but not limited to all of the provisions of those laws cited herein.

50. These violations by Consumer Adjustment were knowing, willful, negligent and/or intentional, and Consumer Adjustment did not maintain procedures reasonably adapted to avoid any such violations.

51. Consumer Adjustment's collection efforts with respect to this alleged Debt from Ms. Gibson caused Ms. Gibson to suffer concrete and particularized harm because the FDCPA provides Ms. Gibson with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

52. Consumer Adjustment's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Ms. Gibson's ability to intelligently respond to Consumer Adjustment's collection efforts because Ms. Gibson could not adequately respond to Consumer Adjustment's demand for payment of this Debt.

53. Ms. Gibson has hired the undersigned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e

54. Ms. Gibson adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

55. Consumer Adjustment violated **15 U.S.C. § 1692e** when it made false and/or misleading representations in an attempt to collect the Debt, when it: (a) engaged in *Debt Parking* by reporting the Debt to Experian, a nationwide CRA, without informing Ms. Gibson of its attempt to collect the Debt first; and, (b) reporting to Experian that the Debt was not disputed, when it was disputed.

56. Consumer Adjustment's actions caused Ms. Gibson to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her dispute.

57. Consumer Adjustment's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gibson is therefore entitled to actual damages, statutory damages up to $1,000.00, and an award of attorneys' fees and costs.

## COUNT II
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(10)

58. Ms. Gibson adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

59. Consumer Adjustment violated **15 U.S.C. § 1692e(10)** when it made false and/or misleading representations in an attempt to collect the Debt, when it: (a) engaged in *Debt Parking* by reporting the Debt to Experian, a nationwide CRA,

without informing Ms. Gibson of its attempt to collect the Debt first; and, (b) reporting to Experian that the Debt was not disputed, when it was disputed.

60. Consumer Adjustment's actions caused Ms. Gibson to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her dispute.

61. Consumer Adjustment's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gibson is therefore entitled to actual damages, statutory damages up to $1,000.00, and an award of attorneys' fees and costs.

## COUNT III
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(8)

62. Ms. Gibson adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

63. Consumer Adjustment violated **15 U.S.C. § 1692e(8)** when it communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its reports to Experian in March 2022.

64. Consumer Adjustment's actions caused Ms. Gibson to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her dispute.

65. Consumer Adjustment's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gibson is therefore entitled to actual damages, statutory damages up to $1,000.00, and an award of attorneys' fees and costs.

## COUNT IV
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(2)(a)

66. Ms. Gibson adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

67. Consumer Adjustment violated **15 U.S.C. § 1692e(2)(a)** when it made false and/or misleading representations in an attempt to collect the Debt, when it: (a) engaged in *Debt Parking* by reporting the Debt to Experian, a nationwide CRA, without informing Ms. Gibson of its attempt to collect the Debt first; and, (b) reporting to Experian that the Debt was not disputed, when it was disputed.

68. Consumer Adjustment's actions caused Ms. Gibson to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her dispute.

69. Consumer Adjustment's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gibson is therefore entitled to actual damages, statutory damages up to $1,000.00, and an award of attorneys' fees and costs.

## COUNT V
## VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692f

70. Ms. Gibson adopts and incorporates paragraphs 1 – 53 as if fully restated herein.

71. Consumer Adjustment violated **15 U.S.C. § 1692f** when it used unconscionable means to collect a debt, by parking the Debt on Ms. Gibson's credit report, despite such actions being deemed unfair and unconscionable by the FTC.

72. Consumer Adjustment's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gibson is therefore entitled to actual damages, statutory damages up to $1,000.00, and an award of attorneys' fees and costs.

## COUNT VI
## VIOLATIONS OF THE FCCPA, FLA. STAT. § 559.72(6)

73. Ms. Gibson adopts and incorporates paragraphs 1 – 53 as if fully restated herein.

74. Consumer Adjustment violated **Fla. Stat. § 559.72(6)** when it disclosed the existence of a debt known to be disputed by the consumer, but failed to disclose that the Debt was disputed, when reporting the Debt to Experian in March 2022.

75. Consumer Adjustment made its reports with reckless disregard whether the Debt was disputed and thus made its report with malice; as such, Ms. Gibson's state law claim is not pre-empted by the FCRA.

76. "Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019), quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964); *see also Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 445

A.2d 1038, 1043-45 (Md.1982) (adopting the Supreme Court's definition of malice in the context of Maryland common law defamation cases).

77. The actions of Consumer Adjustment were willful and intentional, or done with a reckless disregard for the consumer's rights under the FCCPA.

78. By its conduct, Consumer Adjustment is liable for the above-stated violations of the FCCPA, and Ms. Gibson is therefore entitled to actual damages, statutory damages up to $1,000.00, and an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

79. **WHEREFORE,** Ms. Gibson respectfully requests this Honorable Court enter judgment in her favor, and against Consumer Adjustment, for:

    a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b. Statutory damages of **$1,000.00**, pursuant to Fla. Stat. § 559.77(2);

    c. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and/or Fla. Stat. § 559.77(2);

    d. Reasonable costs and attorneys' fees; and,

    e. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted on September 8, 2022, by:

          **SERAPH LEGAL, P. A.**

          */s/ Brandon D. Morgan*
          Brandon D. Morgan, Esq.
          Florida Bar No.: 1015954
          BMorgan@SeraphLegal.com

          */s/ Thomas M. Bonan*
          Thomas M. Bonan, Esq.
          Florida Bar No.: 118103
          TBonan@SeraphLegal.com

          1614 North 19th Street
          Tampa, FL 33605
          Tel: 813-567-1230
          Fax: 855-500-0705
          *Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A    Ms. Gibson's Trans Union Dispute Results, February 11, 2018 - Excerpt

B    Ms. Gibson's Experian Consumer Disclosure, July 21, 2022, Consumer Adjustment Tradeline - Excerpt